**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TINA C. KINSEY** | **CIVIL ACTION** |
| **VERSUS** | **NO:   15-1604** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY** | **SECTION: "I" (4)** |

**REPORT AND RECOMMENDATION**

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to Title 42 United States Code § 405(g). The Commissioner denied Plaintiff, Tina C. Kinsey ("Kinsey"), eligibility for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423, and for Supplemental Security Income Benefits ("SSI") pursuant to Title XVI, 42 U.S.C. § 423.[1]

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b), for the submission of Proposed Findings and Recommendations.

**I.     Background**

Kinsey is a thirty-nine-year-old,[2] 235 pound, 5' 6" female,[3] with a ninth grade education,[4] who has past relevant work as a cashier, housekeeper, cook, meat packer/plant inspector, wood puller, and candy packer.[5]

---

[1] *See* Rec. Doc. No. 1, p.1

[2] *See* Rec. Doc. No. 11-6, p. 14, Tr. 135.

[3] *Id.* at Tr. 139.

[4] Rec. Doc. 11-6, Tr. 205.

[5] *Id.*

Kinsey filed for a period of disability and DIB under Title II, and protectively filed for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"), on August 21, 2012.[6] All claims were denied initially on November 2, 2012.[7]

She alleges that she became disabled on August 1, 2012, due to severe bilateral neural L5-S1 disc bulge, a disc bulge at L3-4, and back and hand injuries.[8] She alleges she has not been involved in any substantial gainful activity after June 6, 2011, due to her condition.[9] Her date last insured is December 31, 2016.[10]

Kinsey filed a written request for a hearing on February 5, 2013.[11] Timothy G. Stewart, the Administrative Law Judge ("ALJ"), held a hearing on October 18, 2013.[12] The ALJ denied Kinsey's claims on January 16, 2014, finding that she was not disabled under the meaning of the Social Security Act ("SSA").[13]

In his decision, the ALJ analyzed Kinsey's claims pursuant to the five-step[14] evaluation process used to determine whether a claimant is "disabled." Using this process, the ALJ found that

---

[6] *See Id.*

[7] *Id.*

[8] *See* Rec. Doc. No. 11-6, p. 18, Tr. 139.

[9] *See* Rec. Doc. No. 11-6, p. 18, Tr. 139.

[10] *See* Rec. Doc. No. 11-6, p. 18, Tr. 139.

[11] *See* Rec. Doc. 11-2, p. 21, Tr. 20.

[12] *Id.*

[13] *Id. At* 23

[14] To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. *Carey v. Apfel*, 230 F.3d 131, 134-35 (5th Cir. 2000); citing *Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999). First, the claimant must not be presently working at any substantial gainful activity. Id. Second, the claimant must have an impairment or combination of impairments that are severe. Id. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* (citing *Crowley*, 197 F.3d 194, 197-98). Third, the claimant's impairment must meet or equal an impairment listed in the

2

Kinsey met the insured status requirements of the SSA through December 31, 2016, and that she did not engage in substantial gainful activity since August 1, 2012, her alleged onset date.[15] The ALJ further found that she suffered from degenerative disc disease of the lumbar spine, lumbar spinal stenosis, and laceration of the tendons in the right upper extremity status post-surgery which were severe impairments.

The ALJ further found that Kinsey did not have an impairment, or combination thereof, which medically equaled the impairments listed in 20 C.F.R. Part 404 to constitute a presumptive disability.[16] The ALJ found that Kinsey does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.[17] The ALJ further found that Kinsey had the residual functional capacity ("RFC") to perform light work and that she may stand/walk for four of eight hours in a workday, occasionally climb ramps and stairs, and stoop, kneel, crouch, and crawl. The ALJ further found that she could never climb ladders, ropes, or scaffolds; frequently balance; and perform handling with the right dominant hand.[18] The ALJ found that Kinsey is unable to perform any past relevant work and that she was a younger individual at the time of the disability's onset.[19] The ALJ found that Kinsey has a limited

---

appendix to the regulations. Id. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work that exists in the national economy, considering the claimant's residual functional capacity, age, education, and past work experience. *Id. See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

[15] *See* Rec. Doc. No. 11-2 p. 26, Tr. 22.

[16] *Id.* at 23.

[17] *See* Rec. Doc. 11-2, p. 4, Tr. 16.

[18] *Id.* at 24-25.

[19] *Id*.

3

education, is able to communicate in English, and that considering her age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she could perform.[20] The ALJ found that Kinsey has not been under a disability from August 1, 2012, through the date of his decision on January 16, 2014.[21]

Kinsey sought timely review of the ALJ's decision with the Appeals Council on February 13, 2014.[22] The Appeals Court denied Kinsey's Request for Review on April 1, 2015. Thereafter, Kinsey filed the instant action in this Court, on May 13, 2015, seeking review of the ALJ's decision.[23] Kinsey alleges that the ALJ's opinion is not based on substantial evidence because he rejected the treating physician's opinion and instead adopted the non-examining state agency's opinion. Second, he alleges that the ALJ's opinion is not based on substantial evidence because the ALJ's RFC assessment only found that she could do light work with frequent manipulative limitations or limitations in performing activity with a schedule, maintain regular attendance, and be punctual with customary tolerance.

## II. **Standard of Review**

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether: (1) the final decision is supported by substantial evidence and (2) whether the Commissioner applied the proper legal standards when evaluating the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de*

---

[20] *Id.* at 22

[21] *Id.* at 23.

[22] *See* rec. Doc. No. 11-2, p. 15-17, Tr. 14-16.

[23] *See* Rec. Doc. No. 12, p. 1.

4

*novo*, or substitute its judgment for that of the Commissioner. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). However, an ALJ's failure to apply the correct legal test constitutes a ground for reversal. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d, 552, 555 (5th Cir. 1995)(citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found where there is only a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973). However, a single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Franklin v. Soc. Sec. Admin.*, No. 12-2681, 2013 WL 5739078, at *2 (E.D. La. Oct. 22, 2013)(citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3rd Cir. 1983)).

The ALJ must give controlling weight to the opinion of a treating physician if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez*, 64 F.3d at 176 (citing 20 C.F.R. § 404.1527(d)(2)). However, "'[t]he Commissioner is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez*, 64 F.3d at 175 (quoting Bradley v. Bowen, 809 F.2d 1054, 1057 (5th Cir. 1987)). The relevant criteria to consider provides that the

ALJ consider (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See* 20 C.F. R § 404.1527. "Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence'." *Legett*, 67 F.3d at 566 (citing *Greenspan*, 38 F.3d at 237).

Where there is reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, the ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under 20 CFR 404.1527 (2). *See Newton v. Apel*, 209 F.3rd 448 (5th Cir. 2000). Further, regardless of the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*, 64 F.3d at 176.

Finally, the Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnosis and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." *Hendricks v. Apfel*, No. 99-1212, 2000 WL 174884, at *3 (E.D. La. Feb. 14, 2000) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

The concept of disability is defined in the Social Security Act as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a constructive period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental

impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

Remand for further consideration of disability benefits on grounds of new evidence requires that the evidence be (1) "new," (2) "material," and (3) that good cause be shown for the failure to incorporate such evidence into the record in a prior proceeding.[24]

### III.   Analysis

#### A.   Whether the ALJ's rejection of the treating physician opinion is contrary to law rendering his decision not supported by substantial evidence?

Kinsey alleges that the ALJ's rejection of the treating physician's opinion is contrary to law rendering his decision not supported by substantial evidence.[25]  Kinsey alleges that the ALJ erred because he incorrectly found that Dr. Genovese's opinion would not meet the duration requirement.[26]  Kinsey also contends that the ALJ erred when he accorded "significant weight" to non-examining state agency consultant Dr. Lee's opinion because he never examined Kinsey so his opinion could not possibly be based on the entirety of the record.[27]

In opposition, the Commissioner contends that the ALJ's decision in analyzing Kinsey's claim for DIB and SSI benefits should be affirmed because: (1) the ALJ properly rejected the

---

[24] *See Dorsey v. Heckler*, 702 F.2d 597, 604 (5th Cir. 1983).

[25] *See* Rec. Doc. No. 12, p.13.

[26] *See* Rec. Doc. No. 11-2, p. 15.

[27] *See* Rec. Doc. No. 12, p. 1.

7

opinion of Dr. Genovese and (2) the ALJ properly concluded that Kinsey could perform a restricted range of light work.[28]

The ALJ did an exhaustive analysis of the medical records including the treatment provided by Dr. Genovese, her primary care physician, who treated her for approximately ten months before she had surgery.[29] The ALJ noted that Kinsey was a candidate for surgery which she did have in December 2013 as a result of an MRI which noted that she had a small central disc protrusion and bulge at L3-4, with moderate central canal narrowing and abutment of the bilateral transiting L4 nerve roots and bilateral facet osteoarthritis with mild bilateral neural foraminal narrowing.[30] The ALJ further noted that the MRI showed more significant findings at the lower levels; namely, disc bulge with central and right paracentral annular fissure at L4-5 with compression of the bilateral transition L5 nerve roots and mild osteoarthritis; and acute reactive endplate changes with bone marrow edema in the endplates at L5-S1, along with circumferential disc bulge with mild central canal narrowing and abutment of the bilateral transiting S1 nerve root, bilateral facet osteoarthritis, and severe bilateral neural foraminal narrowing.[31]

The ALJ noted that, according to the chiropractor, by June 2012 Kinsey reported that her pain was improving. The ALJ also noted that Dr. Genovese had completed a physical capacity evaluation and found that her limitations were all due to severe lumbar spinal stenosis and sciatica.[32] The ALJ further noted Dr. Genovese's finding that Kinsey would have extreme

---

[28] *See* Rec. Doc. No. 16, p. 1.

[29] *See* Rec. Doc. No. 11-2, P.17.

[30] *See* Rec. Doc. No. 11-12, Id.

[31] *Id.* at. 18.

[32] *Id.*

limitation in her ability to perform with a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday/week without interruptions from medically based symptoms, and perform a consistent pace without unreasonable rest breaks.[33] He also noted that Dr. Genovese's ability to prescribe narcotic medication was suspended.[34]

The ALJ noted that in December 2012, approximately one year before her surgery, she was examined by Disability Determination Service (DDS) physician Dr. John Engle who found that during a physical examination Kinsey could perform heel-to-toe ambulation without difficulty and did not require an assistive device.[35] He further noted that her grip strength was normal and that she exhibited decreased strength of the lower right extremity.[36] The ALJ further noted that seated and supine straight leg raising test was negative.[37] He noted that she presented to physical therapy on May 22, 2013 and reported poor compliance with home exercises although she had decreased pain.[38]

The ALJ noted Kinsey's complaints of increasing pain began in August 2013 during the series of physical therapy sessions but that her symptoms generally improved after each session.[39] The ALJ noted that even though she had symptoms requiring surgical correction that there was no

---

[33] *Id.* at 19.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.* at 19.

9

medical evidence showing that she would have increased limitations than that already assessed above that they would last for the requisite 12 month period including the recovery period.[40]

After conducting an analysis of her medical records, the ALJ gave no weight to Dr. Genovese's physical functional assessment because it was not supported by the overall objective medical evidence of record. He further noted that Dr. Genovese's opinion was rendered several months before Kinsey was examined by Dr. Whitecloud, an orthopedist and nearly one year before she began physical therapy.[41] He also noted that Dr. Genovese's opinions were contradicted by the objective findings of Drs. Engle and Whitecloud. The ALJ noted that there was nothing in the medical records from the time she was examined in May 2012 by Dr. Whitecloud suggesting that she experienced greater limitations than indicated that would be expected to last 12 months, including the surgical recovery period.[42] The ALJ noted that the last visit of record with Dr. Genovese occurred in September 2012, which was before surgery, such that even if restrictions were appropriate, there is no indication that her condition continued at that level for the requisite 12 months.[43]

It is settled that in considering whether a potential claimant is disabled, medical opinions from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments will always be considered. 20 C.F.R. § 404.1527. If the record contains a medical opinion from a treating physician on the nature and

---

[40] *See* Rec. Doc. 21.

[41] *Id.*

[42] *Id.*

[43] *Id.*

10

severity of the claimant's impairments, the Commissioner's Regulations dictate that it must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. § 404.1527(c)(2); *see also Frey v. Brown*, 816 F.2d 508, 513 (10th Cir. 1987).

The Regulations provide that the ALJ will make a determination based on the available evidence if all evidence received by the ALJ, including medical opinions, if consistent. 20 C.F.R. § 404.1527(c)(4). The Regulations also contain a general rule that greater weight should be given to the medical opinions of treating sources because they are "more likely to be the medical professionals most able to provide a detailed, longitudinal picture" of a claimant's medical impairments. 20 C.F.R. § 404.1527(c)(2). However, if a medical opinion issued by a treating physician is not given controlling weight because it is not well-supported or inconsistent with evidence in the record, then the Court will determine the appropriate weight to give the opinion.

In determining how much weight to give a treating physician's report, the ALJ must consider six enumerated factors: (1) the length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence in support of the medical opinion; (4) the consistency of the medical opinions reflected in the record as a whole; (5) whether the medical provider is a specialist in the area in which he renders his opinions; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

Based on the examination of the aforementioned factors, the ALJ must decide how much weight to give the treating physician's opinion. If the results from multiple factors suggest that the treating physician's opinion should be more closely considered despite its inconsistency or lack of support in the record, great weight should be given to it. *See Mosca v. Massanari*, 2002

11

WL 511522, at *7 (D. Mass. Jan. 30, 2002). In all situations, the ALJ must give specific, legitimate reasons if the decision disregards the treating physician's opinion that a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 758 (10th Cir. 1988).

If the ALJ does not discuss or apply the factors listed in 20 C.F.R. § 404.1527(d), the Court may remand the case for re-evaluation if the ALJ assigned more weight to a non-treating source opinion than to the treating physician's medical opinion of the claimant. *Mosca*, 2002 WL 511522, at *7; *see also Baker v. Brown*, 886 F.2d 289, 291 (10th Cir. 1989). In situations where the treating physician's opinion is not given controlling weight, the ALJ must also explain the amount of weight he has assigned to the opinions of State agency medical and psychological consultants. 20 C.F.R. § 404.1527(d)(2).

The ALJ found that Dr. Genovese's physical functional assessment which was rendered on August 27, 2012, was not entitled to weight because it was not supported by the objective medical evidence of record. In determining that Dr. Genovese's opinion was not entitled to the weight mentioned, he considered the overall objective evidence of record. Contrary to Plaintiff's contention, the ALJ did not find that Dr. Genovese stopped treating her. Instead, he indicated that the physical functional assessment he made preceded the physical therapy she received which improved her functionality. He further noted that her condition at the time of the assessment by Dr. Genovese, an internist, occurred before she was seen by the orthopedic doctor, Dr. Whitecloud, and that after the physical therapy she generally improved after each session.[44] *See* 20 C.F.R. §§ 404.1527(c)(3), (4), 416.927(c)(3), (4) (addressing the supportability and consistency of medical

---

[44] Failure to follow a prescribed course of treatment is an indication of non-disability. *Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990).

12

opinions). The ALJ noted that Dr. Genovese's finding contradicted Dr. Engle and Dr. Whitecloud's finding.

The Court notes that despite Dr. Genovese's findings, the record is significant for the lack of findings of atrophy, consistent muscular weakness, limitation of motion, or weight loss.[45] Further, Dr. Whitecloud's, an orthopedist, physical examination showed Plaintiff had normal reflexes, sensation, motor strength, range of motion, and gait.[46]

The Court also notes that John Engle, M.D., a consultative examiner, conducted an extensive physical examination on December 20, 2012.[47] Dr. Engle's examination demonstrated that Plaintiff had decreased strength of her right lower extremity on hip flexion but no neurological deficit.[48] Dr. Engle noted that she had no range of motion deficit, did not require an assistive device and could perform heel-to-toe ambulation without difficulty.[49] In contrast, when she was examined by Dr. Whitecloud, her gait was normal even though it was not normal when she was seen by Dr. Engle.[50]

Additionally, while the Plaintiff believes that the ALJ erred when he made reference to Dr. Genovese specialty but not Dr. Lee's specialty, the claimant's conclusion amounts to supposition only. Specifically, Kinsey contends that Dr. Lee's opinion was rendered before the record containing later medical evidence was produced and his opinion "may well have been different

---

[45] Tr. 331, 357-62, 391, 399, 409-17, 420, 422-25, 444.

[46] Tr. 371.

[47] Tr. 18-19, 21, 357-62.

[48] Tr. 19, 359.

[49] Tr. 359.

[50] Tr. 371.

had he known that a neurosurgeon determined that Kinsey needed surgery and that surgery was performed." However, Dr. Lee had more than enough evidence in front of him, including Dr. Genovese's opinion, the report from the consultative examiner and the physical therapy records when he issued his opinion.[51] The Court finds that the ALJ's assessment of the treating physician's opinion is supported by substantial evidence.

### B. Whether the ALJ's RFC finding is based upon substantial evidence?

Kinsey argues that the ALJ focused on the evidence that supported his findings, but ignored other evidence supporting her claim.[52] Kinsey contends that the ALJ's decision provides no explanation as to why, if her pain was so mild, she would need immediate surgery. Kinsey contends that at times her pain was so severe that she was unable to walk and had to be carried into the doctor's office and that for one year and ten months her examinations revealed limited range of motion (ROM), tenderness to palpation (TTP), muscle spasms, decreased right extremity strength, and positive straight leg rising (SLR).

Kinsey contends that the ALJ's findings that she can perform frequent gross manipulation[53] ignored her difficulties with sitting, standing and walking and are wholly contrary to the objective evidence, which proves that Kinsey has problems with grip strength[54] and problem standing, walking, sitting.[55] Kinsey contends that the ALJ does not address the finding that Kinsey, despite her severe pain and depression, has problems with her ability to complete a normal workday and

---

[51] Tr. 75-82.

[52] Pl.'s Br. at 14.

[53] R.42.

[54] R 358.

[55] R.44-45, R.434, R409.

perform work activity with the pace necessary by normal work activity. Kinsey therefore contends that it was impermissible for the ALJ to find that she had no limitation in this area because the ALJ is required to include in the RFC limitations caused by pain and medication side effects.[56]

In contrast, the Commissioner contends that after reviewing all the evidence in the record, including Kinsey's testimony and the objective medical evidence, the ALJ properly concluded that she could perform a restricted range of light work.[57] The Commissioner contends that while the ALJ may not have cited every piece of medical evidence in the record that supported his conclusion, he was not required to discuss explicitly all the evidence that supported his decision, nor must an ALJ follow formalistic rules. The Commissioner contends that while Kinsey complains about the ALJ's finding that she could perform frequent gross manipulation, she has not pointed to evidence that contradicts the ALJ's finding. The Commissioner further contends that the ALJ's findings regarding her ability to sit, stand, and walk are consistent with the objective evidence. The Commissioner contends that the record does not support any non-exertional limitations and that Kinsey has not cited any objective evidence that demonstrates she has limitations in these areas.

The ALJ is not required to incorporate any specific limitations into his RFC assessment simply because it appears in a medical opinion.[58] Rather, "[y]our residual functional capacity is the most you can still do despite your limitations. [The Commissioner] will assess your residual

---

[56]SSR 96-7; 1996 WL 374186.

[57]Tr. 16-21.

[58]*See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

—
—
—
—

functional capacity based on all the relevant evidence in your case record."[59] "A person's residual functional capacity is determined by combining a medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work."[60] The ALJ has the sole responsibility for evaluating a claimant's RFC based on the record as a whole.[61] The ALJ may choose whichever physician's diagnosis is most supported by the record and may incorporate into the RFC assessment the limitations supported by that diagnosis or diagnoses.[62] The Fifth Circuit has explicitly rejected rigid rules of articulation and has held that the ALJ does not have to specifically discuss all evidence that supports the decision or all the evidence that was rejected.[63]

Regarding the suggestion that the ALJ's finding that she could perform frequent gross manipulation was erroneous, Dr. Whitecloud found that her motor strength was normal and Dr. Engle concluded that her fine motor dexterous movements were unaffected. Kinsey does not point to any evidence that suggests she could not perform frequent gross manipulation.[64] Dr. Genovese further concluded that she could use her hands for repetitive simple grasping, handling, fine manipulation, and fingering.[65]

---

[59] 20 C.F.R. § 404.1545(a)(1).

[60] *Hollis v. Bowen*, 837 F.2d 1378, 1386–87 (5th Cir.1988).

[61] *Villa v. Sullivan*, 895 F.2d 1019, 1023–1024 (5th Cir.1990); 20 C.F.R. § 404.1546.

[62] *Id.*

[63] *See Falco v.Shalala*, 27 F.3d 160, 163–64 (5th Cir.1994).

[64] Tr. 360.

[65] Tr. 353.

Next, Kinsey contends that the ALJ ignored her difficulty with sitting, standing, and walking. The record shows that the ALJ considered her reports of increased pain with sitting and walking and burning pain in her legs along with numbness in her right thigh and stabbing pain in her legs.[66] He noted that these complaints occurred in May 2013 and later that month she was sent to physical therapy but did not return and thus required a new prescription.[67] He relied upon the opinion of Dr. Lee who based his exertional and standing/walking sitting limitations on objective studies and the findings of Dr. Whitecloud. Dr. Lee found that she could stand and walk for four hours a day and sit for about six hours in an eight-hour day.[68] Dr. Lee noted that there were postural limitations because of her pain.[69] In assessing whether the ALJ considered Kinsey difficulties with sitting, standing and walking, the Court finds that his assessment in this area is based upon substantial evidence.

Kinsey also complains that the ALJ failed to consider her severe pain and depression and its impact on her ability to work. While Kinsey raises this as an issue, she has failed to point to any objective evidence indicating that she is limited by these non-exertional limitations. It is important to note that the ALJ found that Kinsey left work for reasons unrelated to either physical or mental impairment.[70] Additionally, as noted above the residual functional capacity referenced additional limitations due to pain. The Court upon its review of the record does not find any evidence of depression or suggestion of any limitations associated with depression.

---

[66]Tr. 19.

[67]*Id.*

[68]Tr. 80.

[69]Tr. 81.

[70]Tr. 20.

Finally, Kinsey contends that the record does not support the ALJ's finding that she has no limitation in her ability to perform activity within a schedule, maintain regular attendance, and be punctual with customary tolerance.  The ALJ did however assess Kinsey's credibility and while Kinsey indicates that his finding of no limitation in working within a schedule or regularly attend work is incorrect, there is no evidence in the record suggesting that after the surgery she would not be able to resume work related activity within the residual functional capacity.  In fact, the medical evidence indicates that after the surgery she could resume activities as tolerated.[71] The Court therefore finds that the residual functional assessment is based upon substantial evidence.

## IV.    Recommendation

**IT IS RECOMMENDED** that the decision of the Administrative Law Judge denying Tina C. Kinsey's Disability Insurance Benefits and Supplemental Security Income benefits be **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[72]

New Orleans, Louisiana, this 28th day of April, 2016

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[71] Tr. 21.

[72] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.